Progressive Direct Ins. Co. v. Gonzalez

*Karl L. Stefan,* for plaintiff.
*Bradley Jay Reed,* for defendants.

JOHNSON, *J.* March 8, 2011—

## MEMORANDUM OPINION

Before the court for consideration is the plaintiff's motion for summary judgment, filed on January 10, 2011, defendants' response thereto, and defendants' motion for summary judgment, filed on January 14, 2011. The court heard argument on February 28, 2011. For the following reasons, that plaintiff's motion is granted and defendants' motion is denied.

## I. FACTUAL BACKGROUND

Progressive commenced this declaratory judgment action against defendants regarding the parties' rights and obligations under Progressive's Automobile Insurance Policy number 14538006-1 ("policy"). The policy insured

defendant Tereza Cordero's ("Cordero") 2002 Saturn Sedan on the date relevant to this action, December 26, 2006, when Cordero was involved in a three-car accident in Berkeley County, West Virginia ("accident"). The policy included $100,000 in bodily injury liability coverage per accident, and $100,000 in underinsured motorist benefits per accident.

The accident injured five children riding in Cordero's car: two were Cordero's children; the other three were Michael Diaz, Rafael Diaz, and Joshua Diaz ("Diaz defendants"). As a result of the accident, numerous lawsuits commenced and personal injury claims were asserted on behalf of all the minor plaintiffs in Cordero's vehicle. Named as defendants or additional defendants in those lawsuits and personal injury claims were Cordero and the drivers of the other two vehicles. An interpleader action was commenced and all three drivers' insurance companies tendered their limits of bodily injury liability coverage into the court in order to satisfy the liability of the three drivers. Progressive tendered the $100,000 in motorist benefits promised in Cordero's policy. The other drivers' insurance companies tendered $40,000 and $100,000, for a total of $240,000 ("fund"). Thereafter, settlement was made among the five minor claimants, with the three Diaz defendants receiving a total of $196,000, or approximately 81.66%, of the fund.

Defendants then made a claim upon progressive for the $100,000 maximum underinsurance motorist benefits in the policy. In turn, Progressive offered $18,340. Progressive filed this action seeking a declaratory judgment that Progressive is only liable for $18,340, and both sides

moved for summary judgment.

## II. DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Here, there is no genuine issue of material fact, because the parties agree that their only difference is in interpreting the language of the policy. Because the interpretation of an insurance policy is a question of law for the court, the court's interpretation of the policy will entitle either plaintiff or defendant to judgment as a matter of law. See *Adelman v. State Farm Mut. Auto. Ins. Co.*, 386 A.2d 535, 538 (Pa. Super. 1978). Therefore, it is appropriate for the court to grant Summary judgment on this issue.

The language to be interpreted is the setoff provision within the policy's underinsured motorist coverage provisions, found on page 23 of the policy ("setoff"). The setoff states, in pertinent part:

> The Limits of Liability under this Part III shall be reduced by all sums paid under Part I -- liability to others.

> Any payment made to a person under this Title III shall reduce any amount that the person is entitled to recover under Part I -- Liability to others.

Both Progressive and the Diaz defendants appear to agree on the general purpose of the setoff: to prevent guest passengers from recovering money under the policy's liability coverage and uninsured motorist coverage

combined equaling more than the maximum amount recoverable under the policy's liability coverage. This interpretation is consistent with *Pennsylvania National Mutual Casualty Company v. Black,* 591 Pa. 221, 916 A.2d 569 (Pa. 2007). In that case, a plaintiff passenger asserted that both drivers in a two-car accident were negligent, and moved for recovery of $100,000 liability coverage under a Penn National policy due to his driver's negligence, and $100,000 of underinsured motorist coverage under the Penn National policy due to the other driver's negligence. The relevant policy in that case had a set-off clause that stated, in pertinent part:

> The limit of liability under this [Underinsured Motorists] coverage is reduced by any amount paid to the same person for the same accident under Part A [Liability Coverage] or Part C [Underinsured Motorist Coverage]. *Id.* at 572-573.

The Supreme Court agreed with the lower court's ruling that the bodily injury coverage portion of the policy prohibited duplicate payments pursuant to the underinsured motorist coverage for the same element of loss. See *Id.*

Where plaintiff and defendants disagree is on the applicability of the setoff to any amount paid to the Diaz defendants. Plaintiff contends that, because Progressive committed $100,000 to the fund, and because 81.66% of the fund was paid to the Diaz defendants, Progressive has already paid the Diaz defendants $81,660 in liability coverage. Therefore, the setoff should be applied to reduce the policy's maximum $100,000 payout for underinsured motorist benefits by $81,660, and Progressive would still

owe the Diaz defendants $18,340.

Defendants contest this, although it is unclear whether defendants believe a) that the setoff is valid as written, but does not apply to the facts of this case, and therefore does not apply to any amount paid to the Diaz defendants, or b) the setoff applies, but that Progressive's calculations should not be used. In their motion for summary judgment, defendants argue that Progressive's stance that it has already paid $81,660 to the Diaz defendants is "not supported by any particular provision of the policy" and that "[w]ithout the proportionate reduction calculation being including (sic) in the Policy it cannot be applied to the defendants." At oral argument, defendants elaborated that, unlike *Black*, where there was one claimant, this case involved five claimants, three insurance policies, and an interpleader that created the $240,000 fund. Progressive did not write the setoff provision to account for this situation, defendants argued, and thus the amount Progressive has already paid the Diaz defendants is subject to multiple interpretations. For instance, if one assumes Progressive's $100,000 liability coverage payout was first allotted to the Cordero claimants, who received $37,660 combined, Progressive would have only paid the Diaz defendants $62,340, and therefore would still owe the Diaz defendants $37,660. Defendants argued that, because Progressive wrote the policy, and could have included calculations for such circumstances, the ambiguities should be interpreted in a manner favoring the claimant.

No matter which way the court interprets defendants'

argument, it is contrary to the most logical interpretation of how the setoff applies and the fund was divided. Absent an agreement that specifically allotted money from certain insurance companies to certain victims of the accident, the court assumes each insurance company paid each victim according to the percentage agreed upon at settlement. Therefore, the court assumes Progressive has already paid $81,660 to the Diaz defendants. The court can thus determine how much is still owed to the Diaz defendants by applying the logic of *Black* and setting-off that $81,660 sum against the maximum $100,000 recoverable under the liability coverage and uninsured motorist coverage in the policy. Thus, the court agrees with progressive that the Diaz defendants are owed $18,340 in underinsured motorist benefits.

### III. CONCLUSION

For the foregoing reasons, the court concludes that the policy should be read to limit defendant's underinsured motorist benefits claim to $18,340 in the instant case. therefore, it is hereby ordered that plaintiff's motion is granted and defendants' motion is denied.

### ORDER

And now, March 8, 2011, upon consideration of plaintiff's motion for summary judgment, filed on January 10, 2011, defendants' response thereto, and defendants' motion for summary judgment, filed on January 14, 2011, and after argument thereon, it is hereby ordered, for the reasons set forth in the accompanying memorandum opinion, that plaintiff's motion is granted and defendants' motion is denied.